# Livengood, Appellant, *v.* Hay.

*Mortgage—Conveyance subject to mortgage—Agreement to assume liability—Defense to payment—Act of June 12, 1878, P. L. 205.*

1. Where a woman takes title to real estate subject to a mortgage, and at the request of a bank, which held the mortgage and five notes which it secured, signs an agreement in writing to assume the payment of the mortgage and indorses a similar agreement on the accompanying five notes, and thereafter being pressed for payment of the notes, she requests another person to take them up for her immediate relief and such person thereafter suffers a loss because the proceeds of the real estate are not sufficient to pay the notes; the woman, in an action against her for the loss, cannot set up as a defense that she was induced by the bank to sign the assumption of liability on the promise, not communicated by her to the plaintiff, that she would not incur any personal liability thereby, but that the real estate would alone be answerable for the debt.

2. One who has a defense perfectly good against one or more persons may be estopped to make such defense as against another who has been induced to act without any knowledge of the existence of such defense.

Argued May 6, 1913. Appeal, No. 134, April T., 1913, by plaintiff, from judgment of C. P. Somerset Co., Feb. T., 1910, No. 79, for defendant n. o. v. in case of A. E. Livengood, use of Albert Reitz, Cashier, use of William P. Myers, v. Drucilla Hay. Before RICE, P. J., HENDERSON, MORRISON, ORLADY, HEAD and PORTER, JJ. Reversed.

Assumpsit on promissory notes. Before RUPPEL, P. J.

On December 20, 1904, C. A. Wilt and wife conveyed to Drucilla Hay certain real estate particularly described "subject, however, to a mortgage of twenty-five hundred ($2,500) dollars, given by the grantors hereto in favor of A. E. Livengood, and assumed by the party of the second part hereto as a part of the consideration money or purchase price named herein."

The mortgage referred to was given to secure five promissory notes. These notes at the time of the con-

veyance were owned by the First National Bank of
Salsbury. Shortly after the conveyance Mrs. Hay signed
the following paper:

"A. E. Livengood to Drucilla Hay."

"C. A. Wilt and Rachel C. Wilt to A. E. Livengood."

"Mortgage Record, Somerset Co., Pa., Volume 19,
page 160.

"Having become the purchaser of the land described
in and bound by the above recited mortgage, and being
now the sole owner and in possession thereof, situate on
west side of Grant street, in the borough of Salisbury,
Somerset County, Pennsylvania, deed to C. A. Wilt by
Henry Loechel and wife, by deed dated December 17, 1900,
and recorded December 20, 1900, in Deed Record, vol. 107,
page 595, and by C. A. Wilt and wife to Drucilla Hay,
by deed dated December 20, 1904, I do hereby assume
payment of the said mortgage and accompanying five
notes for the entire balance of principal and interest that
may at any time become due thereon, and according to
the times of payment stipulated therein.

"Witness my hand and seal this 20th day of December,
A. D. 1904.

"DRUCILLA HAY (Seal).

"Attest:

"LEVI LICHLITER."

She also signed the following indorsement on each of
the notes:

"I assume payment of the within note as per assump-
tion of payment of the mortgage securing it, by instru-
ment dated December 20, 1904.

"(Signed) DRUCILLA HAY."

At the trial it appeared that Calvin T. Hay, the hus-
band of the defendant, called on William P. Meyers,
in September, 1905, after default had been made upon

136      LIVENGOOD, Appellant, v. HAY.

Statement of Facts—Opinion of the Court.    [55 Pa. Superior Ct.

the first note, and begged Meyers to put up the money to pay the notes in Mrs. Hay's immediate relief stating to him that the bank was pressing her, but not giving him any other information in reference to the notes. Meyers took over the notes and the mortgage by assignment from the bank, and subsequently foreclosed the mortgage. The proceeds of the sale under foreclosure proceeding was not sufficient to pay all of the notes, and Meyers brought the present action to recover the balance unpaid.

The jury returned a verdict for plaintiff for $1,078.47. Subsequently the court entered judgment for defendant non obstante veredicto.

*Error assigned* amongst others was in entering judgment for defendant non obstante veredicto.

*Francis J. Kooser*, with him *Edmund E. Kiernan* and *Ernest O. Kooser*, for appellant.—Defendant was personally liable under the deed: Blood v. Crew Levick Co., 171 Pa. 328; Hazleton Nat. Bank v. Kintz, 24 Pa. Superior Ct. 456.

Defendant is estopped from asserting an equitable defense: Decker v. Eisenhauer, 1 P. & W. 476; McMullen v. Wenner, 16 S. & R. 18; Sackett v. Fast, 39 Pa. Superior Ct. 431; McMasters v. Wilhelm, 85 Pa. 218; Sidwell v. Evans, 1 P. & W. 383; Downing v. Funk, 5 Rawle, 69; Hesser v. Steiner, 5 W. & S. 476; Dock v. Boyd, 93 Pa. 92.

*Valentine Hay*, with him *A. L. G. Hay*, for appellee, cited: Fisler v. Reach, 202 Pa. 74; May's Est., 218 Pa. 64.

OPINION BY HEAD, J., October 13, 1913:

Wilt, being the owner of a piece of real estate, conveyed it to Drucilla Hay, the defendant. Whilst the title remained in him he borrowed $2,500 from Liven-

good. This sum was to be repaid in five annual install-ments of varying amounts. For each payment Wilt gave to his creditor a promissory note, and the payment of these five notes and the debt evidenced thereby was secured by a mortgage on the real estate aforesaid. The mortgage was duly recorded, and of course became a lien against the property described in it. When Wilt made his deed of conveyance he embraced in it, just following the description of the land and the recital of the title, the following covenant: "Subject, however, to a mort-gage of Twenty-five Hundred ($2,500.00) Dollars given by the grantors hereto in favor of A. E. Livengood, and assumed by the party of the second part hereto as a part of the consideration money or purchase price named herein." The deed was dated December 20, 1904. Meantime the notes originally given to Livengood had been by him transferred to Reitz, the cashier of the First National Bank of Salsbury, where the notes were made payable. Barchus was the president of that bank. Shortly after the title had become vested in Mrs. Hay she was visited by the president of the bank in company with a local magistrate. The five notes aforesaid were presented to her and she signed on the back of each the following: "I assume payment of the within note as per assumption of payment of the mortgage securing it by instrument dated December 20, 1904." The instrument referred to in the language quoted, after reciting the mortgage and the place of its record, was as follows: "Having become the purchaser of the land described in and bound by the above recited mortgage, and being now the sole owner and in possession thereof, . . . . I do hereby assume payment of the said mortgage and accompanying five notes for the entire balance of prin-cipal and interest that may at any time be due thereon and according to the terms of payment stipulated therein. Witness my hand, &c." This instrument was duly ac-knowledged by the defendant and recorded among the mortgage records of the county.

Thus matters remained until in September, 1905, when, after a default had been made in the payment of the first note aforesaid, which was the first installment of the mortgage debt, the bank began to press the defendant for payment. She sent her husband to Meyers, the appellant, and besought him to provide the money necessary to take up her obligations and carry the debt for her until she could more conveniently pay. She had been actively engaged in business, was conducting a store, had managed and operated a hotel, and was the owner of considerable property other than that covered by the mortgage. No intimation was given to Meyers that there was any question as to the various securities representing in fact just what they appeared to stand for. At her instance then and by her solicitation, he paid the entire debt to the bank and took over, by assignments, the various securities we have mentioned. The defendant became more and more in arrears on her indebtedness until Meyers, the assignee of the mortgage, was obliged to foreclose it. The resulting sale did not produce enough to pay the indebtedness, and in December, 1909, the plaintiff began this action of assumpsit to recover the balance of the debt evidenced by the notes aforesaid and the mortgage.

We do not understand it to be seriously questioned that the defendant had incurred a personal liability to pay the mortgage mentioned in her deed. It has long since been settled that by the acceptance of a deed containing a covenant to pay an incumbrance as part of the purchase money, the grantee is in the same condition as if he had signed and sealed a written covenant to the same effect. The first section, therefore, of the Act of June 12, 1878, P. L. 205, is no bar in the plaintiff's way. But that statute further provides that the right to enforce such a liability shall not enure to anyone other than the person with whom such an agreement was made. Let it be conceded, for the purposes of this case, that Livengood, the mortgagee, was a stranger to the

covenant contained in the deed from Wilt to the defendant, and that therefore that covenant could not enure to his benefit; but apart from the obligation of that covenant altogether we then have the duly recorded written undertaking of the defendant that she would pay the mortgage in the language we have already quoted, and her like assumption that she would pay each of the notes to which she had theretofore been a stranger. Her answer to the plaintiff's claim resting on these undertakings is that at the time she signed them, the notes and the mortgage were the property of the bank; that she signed them at the instance and request of the president of the bank, and only did so on the distinct representation of that officer that she would not be incurring any personal liability thereby, and that the property described in the mortgage would alone be answerable for the debt evidenced either by the mortgage or the notes.

As the evidence stood at the close of the trial, the learned judge below felt constrained to instruct the jury that her contention in this respect had been made out by the undisputed evidence, and as a result of that fact the plaintiff was without the remedy that would otherwise have been afforded by these written undertakings.

At this point we are of the opinion the learned judge below fell into error. Let us again concede that if this action had been brought by the bank, whose representative had induced her to sign the personal undertaking on the assurance that it created no individual liability, her defense would be available; does the conclusion of the learned trial judge follow?

Even if the defendant be correct in her statement that she had no knowledge of the existence of the five notes until the day she signed the writing on the back of each and the assumption of the mortgage, she certainly knew of their existence after that time. The notes were ordinary promissory notes. They remained in the hands

of the bank for a considerable time thereafter. Her corresponding assumption of the mortgage itself was on the record unquestioned for many months before the present plaintiff had any interest in the controversy. With the securities held by the bank in that situation, created by her, she went to the plaintiff and besought him to advance his money and step into the shoes of the bank. No intimation was given by her that these various securities, long in the possession of the bank, did not mean exactly what they purported to mean. If she did not intend that the plaintiff should so regard them, it was her duty to have then spoken, and her ignorance of the legal effect of what she had signed will not excuse her from the consequences of that breach of duty, if relief can only be obtained through the loss of the innocent party whom she induced to come to her aid. The books are filled with cases where it has been held that one who has a defense perfectly good against one or more persons may be estopped to make such defense as against another who has been induced to act without any knowledge of the existence of such defense: Decker v. Eisenhauer, 1 P. & W. 476; McMullen v. Wenner, 16 S. & R. 18; Sackett v. Fast, 39 Pa. Superior Ct. 431; McMasters v. Wilhelm, 85 Pa. 218. It is apparent to us therefore that the learned judge below was in error in refusing to consider as of value the fact that the present plaintiff had been induced at the instance of the defendant to take over the securities as they were at the time without any intimation from her or her agent that she would not be bound by the covenants she had signed. The first and second assignments must be sustained.

At the conclusion of the trial the learned judge, being of the opinion that there had been a personal assumption of the mortgage debt by reason of the covenant contained in the deed, instructed the jury to find a verdict for the plaintiff. Having later reached the conclusion that such fact became unimportant because that cove-

nant did not enure to the benefit of the present plaintiff, he entered a judgment for the defendant non obstante veredicto.  But the plaintiff does not sue on the covenant in the deed.  He in no way needs it to make out a prima facie case.  His action is on the promissory notes of which he is the holder.  The defendant has undertaken in writing to pay the notes.  That undertaking rests on a good consideration.  She was the grantee in the deed and the purchase money was her debt in law as well as in morals.  The plaintiff relies on her written promise to pay.  The only defense she offers cannot, for the reasons we have indicated, be successfully interposed against the claim of this plaintiff.  The verdict in favor of the plaintiff therefore has solid support in the evidence and judgment should have been entered thereon.

Judgment reversed and the record is remitted with direction to enter judgment on the verdict.