## Greater Adelphi Building & Loan Assn. v. Trilling et ux.

*Moss & Moss*, for plaintiff; *Harry Shapiro*, for defendants.

MACNEILLE, J., January 24, 1935.—Morris Goldenberg delivered his bond, accompanied by a second mortgage secured on 5415 Berks Street, to the Coöperative Building and Loan Association, and at the same time (April 11, 1923), subscribed to 15 shares of stock in the thirty-third series, which stock he then assigned to the association as collateral security for the loan. Thereafter he sold and conveyed the property to Mr. and Mrs. Trilling, the defendants herein, under and subject to payment of the mortgage. At the time of this conveyance Goldenberg's shares of stock were, by consent of the association, transferred on its books to the defendants, subject, of course, to this collateral stock assignment. Whereupon the defendants, on April 7, 1926, executed to the association their bond, under seals, in the sum of $2,500. On October 22, 1934, judgment was entered against the defendants, and we are now considering a petition of defendants to open this judgment and let them into a defense.

Defendants' first contention is that they received no consideration for the execution of the bond. They make no contention that the bond is either void or voidable because of fraud, accident or mistake, or that it was given for an illegal consideration, nor do they show that an actual valuable consideration was intended to pass from the obligee to the obligor that supplied a motive for entering into the contract.

We think sufficient answer to this contention is contained in Yard v. Patton, 13 Pa. 278, where, on page 285, the court said:

"But one answer to this position is, that the seals of the parties in themselves import a consideration, and save their covenants from falling within the class of nude acts at law and in equity . . .; and it is not now to be doubted, that though a parol, unexecuted promise to make a gift *inter vivos*, without con-

sideration, is void, an agreement under seal to do so, may be enforced as a legal obligation: In re Campbell's Estate, 7 *Barr* 100. Nor as argued for the plain-tiff, is the presence of a seal only presumptive evidence of consideration in Pennsylvania. It is true, that where an actual valuable consideration is intended to pass, and furnishes the motive for entering into a contract, a party may defeat it, by showing a failure of consideration, at any time before its final execution."

Yard v. Patton was decided in 1850; has never been departed from, and is cited at least at late as 1932 in Killeen's Estate, 310 Pa. 182, 187, as authority.

At the argument and in their brief, defendants insist that there never was any consideration for the bond; that nothing of value moved to the obligor from the obligee, and that the obligee suffered no detriment. They even dis-cussed that part of their bond which refers to the fact that the association was willing to transfer the shares if Goldenberg agreed that his bond be not released. Defendants argue, rightly we think, that such a promise on Golden-berg's part to the building association was merely agreeing to do that which he was already bound to do, and that in any event it was of no benefit to the defendants.

It is also true that the assignment of the shares from Goldenberg to the defendants would not have discharged Goldenberg from the liability to the association on his bond, it being a primary obligation which could only be dis-charged by payment. It is not reasonable to believe that either the obligor or obligee regarded this recital in the bond as setting forth a consideration. Neither party to the transaction could have thought that the recital was stating a benefit to the obligor or a detriment to the obligee. It is clear to us that the parties meant to execute a pure specialty—an instrument under seal for the purpose of making it valid without any consideration other than as imported by the seal. Rightly or wrongly, the cases refer to this as being a situation where a seal imports a consideration, and the instrument to be valid needs noth-ing more than the seal.

Plaintiff, in paragraph 3 of its answer, says that the "association held a sec-ond mortgage and had assigned to it shares of stock of the said association as collateral security for the said mortgage and in consideration of the transfer of the said shares of stock to the defendants, David M. Trilling and Shirley S. Trilling, the said David M. Trilling and Shirley S. Trilling executed and deliv-ered the bond which is the subject matter of this suit."

A stockholder in a building and loan association has a right to sell his shares, and the bona fide purchaser may demand that the corporation shall record the transfer on its books. Although the association may charge a reasonable fee for recording the transfer, it may not refuse. See "Law of Building Associa-tions" by G. A. Endlich (1895 ed.), 448, par. 472 et seq. This rule is recognized in Pennsylvania in Bank of Commerce's Appeal, 73 Pa. 59. The Act of June 24, 1895, P. L. 258 (no. 172), sets forth the means whereby the transfer is to be effected.

This averment in the answer seems to be entirely gratuitous on the part of the building association, obligee in the bond, and it looks as if the plaintiff mistakenly thinks that it must find somewhere in this transaction a considera-tion to support the bond. It is noticeable that the defendants do not contend the transfer of stock was within the intent of the parties as consideration at the time the bond was executed. In fact, in their argument and in their brief they vehemently deny this proposition and argue against it. Therefore it could

not have been the intent of the parties to the bond at the time it was executed, and leaves us where we started as having a specialty under seal where no consideration was intended other than as the seal itself should import one. It is true that if the transfer of the stock was in the minds of the parties as consideration to support the bond, it is no such consideration. So that we still have a specialty under seal executed with the intention that the seal alone imports a consideration.

The second contention made by the defendants is that the obligation is one of suretyship and not a direct obligation.

In Arch B. & L. Assn. v. Schlesinger, 69 Pa. Superior Ct. 107, on facts very similar to, if not identical with, those of the instant case, the Superior Court affirmed an opinion of President Judge Martin of Common Pleas Court No. 5 of this county, in which he said (p. 109):

"The bond is under seal, and is a direct obligation binding the defendant to comply with its terms. The fact that a bond of the former owner, Knox, was also held by plaintiff, does not change the character of the bond executed by defendant from a direct obligation to one of suretyship."

The petitioner has raised the question as to whether there was a valid consideration for the execution of the bond. The plaintiff answered "that the bond was executed by" the defendant "in consideration of the assignment to her of the seven shares of stock that had been issued to Knox, the former owner of the mortgaged property". It does not appear that the validity of such a consideration was attacked on the ground that the association was by law bound to transfer the stock to the defendant. It is apparent that the court assumed that, since the bond was under seal, there was no necessity for pointing out a consideration, and the bond was a direct or primary obligation of the defendant, in spite of the fact that the plaintiff association also held the bond of the former owner.

We must remember that the defendants, Trillings, purchased this property from Goldenberg under and subject to the payment of the mortgage which Goldenberg had given to the plaintiff building and loan association. This made them primarily liable because the assumption of this mortgage was in fact part of their purchase price. It is true that this direct obligation was to Goldenberg, and as to him was the personal obligation of the defendants. As to the plaintiff building and loan association, the claim was still limited to the property on which the mortgage was secured. This is due to the Act of June 12, 1878, P. L. 205, providing:

"That grantee of real estate which is subject to ground rent or bound by mortgage or other incumbrance, shall not be personally liable for the payment of such ground rent, mortgage or other incumbrance, unless he shall, by an agreement in writing, have expressly assumed a personal liability therefor".

However, this situation was cured when the defendants gave to the plaintiff their obligation to pay. This gave privity of contract between the plaintiff and the defendants.

The Act of 1878 does not require such assumption to be contemporaneous with the conveyance, and the liability of the grantee as the primary debtor is an adequate consideration for its assumption at any time. The defendants chose to recognize this obligation and provided for it by their bond under seal voluntarily executed. Full authority for this proposition is found in Hazleton National Bank v. Kintz, 24 Pa. Superior Ct. 456 (1904).

In Livengood v. Hay, 55 Pa. Superior Ct. 134 (1913), on page 138, the late Judge Head delivered the opinion and said:

"We do not understand it to be seriously questioned that the defendant had incurred a personal liability to pay the mortgage mentioned in her deed. It

has long since been settled that by the acceptance of a deed containing a covenant to pay an incumbrance as part of the purchase money, the grantee is in the same condition as if he had signed and sealed a written covenant to the same effect. The first section, therefore, of the Act of June 12, 1878, P. L. 205, is no bar in the plaintiff's way. But that statute further provides that the right to enforce such a liability shall not enure to anyone other than the person with whom such an agreement was made . . . but apart from the obligation of that covenant altogether we then have the duly recorded written undertaking of the defendant that she would pay the mortgage. . . ."

We are obliged to say as to the defendants' second contention that it is our opinion that the bond of the defendants is their primary obligation making them directly responsible to the plaintiff.

The third contention of the defendants is that their liability on the bond is discharged because the Coöperative Building & Loan Association, the obligee in the bond, merged with the Greater Adelphi Building & Loan Association, the plaintiff in this suit, and that the defendants received no notice of this merger.

Before the merger, the defendants had conveyed the property to one Barney Cluff under and subject to the mortgage here involved, assigning to him the shares of stock in the association which the defendants had received from Goldenberg subject to collateral assignment to the association. As a result of this merger new shares were given for the old. Defendants claim this injured their position as far as their collateral under the bond is concerned. We have read the pleadings in the case and the depositions, and we do not see where this transaction lessened in any way the value of the collateral, or injured the defendants' position, even if their bond was a contract of suretyship. For reasons already stated, we have concluded it was not a contract of suretyship, but was a primary obligation.

Wherefore, the petition of the defendants to open judgment and let them into a defense is dismissed, and the rule to open the judgment is discharged.